UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ATLE B. NORDVIK,  )
  )
    Plaintiff,  )
  )
v.  ) Civil Action No. 1:18-cv-1419 (TCB)
  )
NANCY A. BERRYHILL,  )
  )
    Defendant.  )
  )

## MEMORANDUM OPINION

Pursuant to the Social Security Act § 205(g), 42 U.S.C. § 405(g), Atle Nordvik ("Plaintiff") seeks judicial review of the final decision of Nancy A. Berryhill ("Defendant"), the former Acting Commissioner of Social Security,[1] denying his request for waiver of overpayment. On February 19, 2019, the certified Administrative Record ("R.") was filed under seal. By April 1, 2019, both parties filed motions for summary judgment with briefs in support, which are now ripe for resolution.[2] For the reasons set forth below, the undersigned U.S. Magistrate Judge, pursuant to 28 U.S.C. § 636(c)(1), will vacate the final decision of the Defendant and remand this matter for further proceedings.

---

1. As of November 17, 2017, Defendant's status as Acting Commissioner of Social Security violated the Federal Vacancies Reform Act of 1988, which limits the time a position can be filled by an acting official. *See* U.S. GOV'T ACCOUNTABILITY OFF., B-329853, VIOLATION OF THE TIME LIMIT IMPOSED BY THE FEDERAL VACANCIES REFORM ACT OF 1998—COMMISSIONER, SOCIAL SECURITY ADMINISTRATION (Mar. 6, 2018). However, Defendant appears to continue to functionally lead the Social Security Administration ("SSA") and is the proper defendant in this case.

2. Filings before the Court include Plaintiff's Motion for Summary Judgment (Dkt. 19) ("Pl.'s Mot. Summ. J."); Defendant's Cross-Motion for Summary Judgment (Dkt. 21) ("Def.'s Mot. Summ. J."); the Memorandum of Law in Support of Defendant's Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment (Dkts. 22 & 23) ("Def.'s Mem. Supp. & Opp'n"); and Plaintiff's Reply to Defendant's Motion for Summary Judgment (Dkt. 25) ("Pl.'s Reply").

## I. PROCEDURAL AND FACTUAL BACKGROUND

On July 10, 2009, Plaintiff applied for retirement insurance benefits under Title II of the Act. (R. at 136-42.) In the application, Plaintiff noted he expected to receive "a pension or annuity based in whole or in part on work after 1956 not covered by Social Security." (R. at 136.) Plaintiff's anticipated non-covered pension stemmed from work completed in Norway prior to moving to the United States in 1991 ("Norway Pension"). (R. at 129-30.) The application informed Plaintiff of his responsibility to report to the Social Security Administration ("SSA") when he became entitled to a pension or annuity not covered by Social Security and that failure to timely report could result in "overpayments that must be repaid." (R. at 140.)

On July 17, 2009, the SSA issued a Notice of Award, finding that Plaintiff was entitled to receive monthly retirement benefits beginning in August 2009. (R. at 133.) The notice included information regarding resources Plaintiff could use in case any questions about his benefits arose. (R. at 135.) Specifically, the notice provided both a toll-free number and the number of Plaintiff's local Social Security office. (R. at 135.) This section of the notice informed Plaintiff that the SSA "could answer most questions over the phone." (R. at 135.) The Notice of Award also informed Plaintiff of his continuing duty to immediately report changes to the SSA. (R. at 131, 134.)

In the years following the SSA's award of retirement benefits, Plaintiff received several letters from the SSA requesting information related to receipt of pensions not covered by Social Security. (R. at 43-44, 158-59.) The first three letters were sent on or around February 25, 2010, September 17, 2011, and November 29, 2012. (R. at 44.) Upon receipt of the November 29, 2012 letter, Plaintiff provided a written reply on December 3, 2012. (R. at 44.) Additionally, Plaintiff contacted the SSA at the toll free number. (R. at 44.) Plaintiff spoke with a Social Security representative who, after consulting with a supervisor, informed Plaintiff that his future receipt of

2

the Norway Pension would not affect his Social Security retirement benefits. (R. at 44.) The representative also communicated to Plaintiff that he could anticipate no longer receiving letters requesting additional information regarding non-covered pension income. (R. at 44.)

In January 2014, Plaintiff began receiving his Norway Pension. (R. at 23.) Plaintiff did not immediately report this additional income to the SSA. (R. at 23.)

On August 5, 2014, more than a year-and-a-half after his call with the SSA representative, Plaintiff again received a letter from the SSA requesting information pertaining to non-covered pension income. (R. at 44.) Believing the SSA committed a mistake, Plaintiff, this time, contacted his local Social Security office in Fairfax. (R. at 44.) The representative there again conveyed that Plaintiff's Norway Pension would not impact his retirement benefits. (R. at 44.) The representative did, however, suggest Plaintiff inform the SSA about his receipt of the Norway Pension. (R. at 44.) On September 11, 2014, Plaintiff completed and returned a Modified Benefit Formula Questionnaire in which he listed his Norway Pension. (R. at 129-30.)

On November 12, 2014, the SSA sent another letter to Plaintiff. (R. at 125-28.) The letter stated the SSA reduced Plaintiff's benefits by nearly $400 due to earnings not covered by Social Security. (R. at 44, 125-28.) The SSA determined January 1, 2014 should serve as the effective date for the reduction. (R. at 125-28.) As a result of the reduction, the SSA overpaid Plaintiff in the amount of $3,640, for payments made from January 2014 through August 2014. (R. at 125-28.) Approximately two months later, Plaintiff filed a request for reconsideration of the reduction in his benefits and to waive the overpayment. (R. at 117-120.)

On July 21, 2015, the SSA advised Plaintiff that upon reconsideration it would uphold its prior decision to reduce Plaintiff's benefits. (R. at 57-64.) The SSA also advised Plaintiff that he could still request a waiver of his overpayment from his local Social Security office. (R. at 64.)

3

On September 18, 2015, Plaintiff met with Myriam Cederstrom, a representative at the local Social Security office in Fairfax. (R. at 47.) Plaintiff met with Ms. Cederstrom, in part, to discuss the process of requesting a waiver of overpayment. (R. at 47.) Ms. Cederstrom told Plaintiff that, due to the fact the SSA already made its decision, the local office could no longer take any additional action. (R. at 47.) Instead, the representative advised Plaintiff to request a hearing with an Administrative Law Judge ("ALJ") to seek a waiver of the overpayment and for reconsideration of the reduction. (R. at 47.) On that same day, Plaintiff requested a hearing with an ALJ. (R. at 103.)

On June 6, 2017, ALJ F.H. Ayer held a hearing, at which Plaintiff appeared and testified. (R. at 143-64.) At the hearing, the ALJ confirmed he received Plaintiff's written submissions outlining Plaintiff's argument for reconsideration and waiver. (R. at 146.) During his testimony, Plaintiff recounted the steps he took in late 2012 to ascertain whether the Norway Pension would affect his Social Security retirement benefits, including calling the SSA at the toll free number. (R. at 158-59.)

Approximately six weeks later, the ALJ issued a decision, finding that the SSA appropriately reduced Plaintiff's benefits and that Plaintiff was "not without fault" in causing the overpayments. (R. at 21-26.) As part of his fault discussion, the ALJ focused on the fact the SSA informed Plaintiff of his reporting responsibilities on several occasions. (R. at 25-26.) Accordingly, the ALJ determined that recovery of the overpayment was not waived and, thus, Plaintiff was liable for repayment of $3,640. (R. at 26.)

Plaintiff then requested review of the ALJ's decision to the Appeals Council for the Office of Disability and Adjudication and Review ("Appeals Council"). (R. at 10-12.) The Appeals Council denied Plaintiff's request for review on June 19, 2018 making the ALJ's decision the final

4

decision of Defendant. (R. at 6-9.)

On October 11, 2018, the Appeals Council granted Plaintiff's request for an extension to file a civil action. (R. at 3.) On November 16, 2018, Plaintiff filed his Complaint for judicial review of Defendant's decision. (Dkt. 1.) Defendant filed a timely answer on February 19, 2019. (Dkt. 13.) By April 1, 2019, both parties filed their respective motions for summary judgment.

## II. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of Defendant's final decision is limited to determining whether the ALJ's decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012).

Substantial evidence has long been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Put another way, substantial evidence is "more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015). In reviewing for substantial evidence, the Court must examine the record as a whole, but it may not "undertake to re-weigh the conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). The correct law to be applied includes the Social Security Act, its implementing regulations, and controlling case law. *See Coffman v. Bowen*, 829 F.2d 514, 517-18 (4th Cir. 1987).

While the aforementioned standard of review is deferential, where the ALJ's determination is not supported by substantial evidence on the record, or where the ALJ has made an error of law, the district court must reverse the decision. *See id.* at 517. With this standard in mind, the Court evaluates the ALJ's findings and decision.

## III. ANALYSIS

There are two issues before the Court. First, whether the ALJ erred in failing to consider Plaintiff's argument that the overpayment should be waived due to receipt of erroneous information from an official source. Second, if the Court should dismiss Plaintiff's complaint as untimely. The Court considers each in turn.

### a. Erroneous Information from an Official Source

Plaintiff argues that the overpayment should be waived because he was without fault in causing the overpayment. In support of this argument, Plaintiff focuses solely on the ALJ's failure to consider Plaintiff's argument that he relied on erroneous advice from a SSA official. (Pl.'s Mot. Summ. J. at 6-9.) Defendant argues substantial evidence supports the ALJ's "not without fault" finding as the Record clearly shows the SSA informed Plaintiff of his reporting responsibilities on several occasions. (Def.'s Mem. Supp. & Opp'n at 7-8.)

Pursuant to the Social Security Act, the Government may not recover an overpayment of benefits from "any person who is without fault if such adjustment or recovery" would defeat the purposes of the Social Security Act or "would be against equity and good conscience." 42 U.S.C. § 404(b)(1). The Social Security regulations specifically provide for the waiver of overpayment where an individual accepts an overpayment "because of reliance on erroneous information from an official source within the Social Security Administration . . . with respect to the interpretation of a pertinent provision of the Social Security Act or regulations pertaining thereto." 20 C.F.R. § 404.510a. "[S]omeone who relies on erroneous information from an official source meets both requirements for waiver set forth in 42 U.S.C. § 404(b): he or she is without fault, and recovery would be against equity and good conscience." *Gladden v. Callahan*, 139 F.3d 1219, 1223 (8th Cir. 1998).

A claimant bears the burden of establishing that he or she was without fault for the overpayment and that recovery of the overpayment would defeat the purposes of the Act or be against equity and good conscience. *See Young v. Soc. Sec. Admin.*, Civil No. 2:13cv63, 2014 WL 949040, at *5 (E.D. Va. Mar. 10, 2014) (citations omitted); *Kendrick v. Califano*, 460 F. Supp. 561, 570 (E.D. Va. 1978). A claimant will be "at fault" when the overpayment was the result of (1) "[a]n incorrect statement made by the individual which he knew or should have known to be incorrect," (2) "[f]ailure to furnish information which he knew or should have known to be material," or (3) "acceptance of a payment which he either knew or could have been expected to know was incorrect." 20 C.F.R. § 404.507. The ALJ must "consider all pertinent circumstances" such as the claimant's age and intelligence. *Id.* Moreover, the ALJ "must include a discussion of 'findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record.'" *Gatewood v. Astrue*, Civil No. JKS-08-1744, 2011 WL 939027, at *2 (D. Md. Mar. 16, 2011) (quoting *See v. Wash. Metro Area Transit Auth.*, 36 F.3d 375, 384 (4th Cir. 1994)).

Here, the ALJ's decision does not address Plaintiff's contention that erroneous guidance from a Social Security representative contributed to his failure to immediately report his Norway Pension. Instead, the ALJ's decision relies mainly on the notices Plaintiff received detailing Plaintiff's reporting responsibilities. (R. at 25.) In fact, while ignoring Plaintiff's argument, the ALJ suggests Plaintiff "should have sought out additional resources provided to him in the aforementioned notices" without once mentioning Plaintiff did speak with a representative in 2012. (R. at 25.) The ALJ erred by not considering Plaintiff's erroneous information argument.

In a similar case, the district court remanded the matter for further administrative proceedings where the ALJ failed to consider evidence that a claims representative potentially

7

provided the claimants with erroneous information. *See Cucuzzella v. Weinberger*, 395 F. Supp. 1288, 1294-96 (D. Del. 1975). The court there held that "the spirit of [20 C.F.R. § 404.510a] is that good-faith reliance on information obtained from the Social Security Administration ought at least to be considered in determining whether an individual acted 'without fault.'" *Id.* at 1295; *see also Ricketts v. Heckler*, 631 F. Supp. 818, 820 (W.D. Va. 1986) (quoting *Weinberger* approvingly). More recently, courts in this Circuit have remanded for further proceedings upon finding the relevant decisionmaker failed to consider testimony or make a credibility determination in an overpayment scenario. For instance, in *Holder*, the district court remanded the case because

> [W]ithout an assessment of the credibility of [claimant's] testimony that he repeatedly received erroneous guidance on the relevant provisions from SSA employees, the ALJ has not provided substantial evidence to support a conclusion that Plaintiff, who was a layperson, 'knew or could have been expected to know that payments were unwarranted.'

*Holder v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-15-666, 2016 WL 447832, at *3 (D. Md. Feb. 4, 2016); *see also Gatewood*, 2011 WL 939027, at *3 (ordering remand because Appeals Council failed to consider and weigh claimant's testimony).

In the present case, Plaintiff testified before the ALJ and provided a thorough, detailed account of his December 2012 call with the SSA. (R. at 159.) Plaintiff stated he called the SSA to determine if he "was supposed to have [his] Social Security benefit reduced because of the pension from Norway, that [he] would supposedly get two years down the road." (R. at 159.) He further testified that the SSA representative, after speaking with a supervisor, assured him the Norway pension would not affect his Social Security benefits and that he should not receive any more letters in the future pertaining to non-covered income. (R. at 159.) Plaintiff also testified that he believed his December 2012 call with the SSA completely "resolved" the issue. (R. at 159). In addition to the testimony, Plaintiff repeatedly referenced his 2012 call in written submissions filed

with the ALJ prior to the hearing. (R. at 44, 52, 55.)

Therefore, the issue of whether Plaintiff may have relied "on erroneous information from an official source within" the SSA was fully before the ALJ. Accordingly, the ALJ erred by failing to consider this argument when determining if Plaintiff was without fault in receiving the overpayment. Due to this error, remand is appropriate.

### b. Statute of Limitations

In a footnote at the very end of her Motion for Summary Judgment, Defendant argues that Plaintiff's Complaint should be dismissed as Plaintiff did not commence this action until after the statute of limitations expired. (Def.'s Mem. Supp. & Opp'n at 10 n.1.)

As an initial matter, Defendant correctly notes that Plaintiff filed his Complaint one day late. The Appeals Council mailed its decision affirming the ALJ's decision to Plaintiff on June 19, 2018, (R. at 6-9.), thereby beginning a sixty-day filing period in which Plaintiff could commence a civil action, *see* 42 U.S.C. § 405(g). Plaintiff timely requested an extension. (R. at 4-5.) The Appeals Council granted the extension on October 11, 2018, providing Plaintiff with a total extension of thirty-five days (i.e. thirty-day extension plus five days to allow for mail delivery). (R. at 3.) Therefore, Plaintiff's Complaint was due no later than November 15, 2018. Although Plaintiff mailed the Complaint on November 15, 2018, (Dkt. 1-6), Plaintiff did not file the Complaint until November 16, 2018 when the Clerk's office received it, *see Allen v. City of Fredericksburg*, Civil Action No. 3:09CV63, 2011 WL 782039, at *6 (E.D. Va. Feb. 22, 2011) ("[A] complaint is filed 'when the clerk receives the complaint . . . .'" (quoting *Robinson v. Doe*, 272 F.3d 921, 922-23 (7th Cir. 2001))). Nevertheless, the Court declines to dismiss Plaintiff's Complaint.

The filing period prescribed by § 405(g) is a non-jurisdictional statute of limitations. *See*

*Bowen v. City of New York*, 476 U.S. 467, 478-79 (1986). Social Security appeals are subject to the Federal Rules of Civil Procedure. *See Califano v. Yamasaki*, 442 U.S. 682, 699-700 (1979). Federal Rule of Civil Procedure 8(c) requires a party to raise any affirmative defenses in its initial responsive pleading. *Tidewater Fin. Co., Inc. v. Fiserv Sols., Inc.*, 192 F.R.D. 516, 523 (E.D. Va. 2000). "Failure to assert an affirmative defense in a responsive pleading ordinarily waives that defense." *Id.* (citing *Williams v. Gradall Co.*, 990 F. Supp. 442, 446 (E.D. Va. 1998)). Accordingly, in context of Social Security cases, the statute of limitations may be waived if not timely raised. *See Weinberger v. Salfi*, 422 U.S. 749, 763 (1975); *see also Matthews v. Eldridge*, 424 U.S. 319, 328 n.9 (1976); *Johnson v. Sullivan*, 922 F.2d 346, 355 (7th Cir. 1990) (en banc) ("[T]he Secretary must raise this 60–day statute of limitations in a responsive pleading as an affirmative defense or it will be considered waived." (citations omitted)).

In this case, Defendant did not raise the statute of limitations as an affirmative defense in her timely filed answer. Nor, unlike in other cases, did Defendant move to dismiss the Complaint. *See, e.g., Kimberly S.Y. v. Comm'r, Soc. Sec.*, Civil Action No. DKC 18-0047, 2019 WL 295656, at *1 (D. Md. Jan. 23, 2019); *Shellman v. Colvin*, No. 2:14cv382, 2015 WL 731631, at *3 (E.D. Va. Feb. 18, 2015). It appears to the Court, therefore, that Defendant waived the statute of limitations argument. However, a waiver "should not be effective unless the failure to plead resulted in unfair surprise or prejudice." *S. Wallace Edwards & Sons, Inc. v. Cincinnati Ins. Co.*, 353 F.3d 367, 375 (4th Cir. 2003) (citation omitted).

There is no reason why Defendant could not have raised this issue earlier in either a motion to dismiss or her Answer. Instead, Defendant chose to raise the statute of limitations argument in a footnote at the very end of its memorandum in support. Such a tactic is an unfair and unreasonable way to raise a late affirmative defense with a *pro se* party. Due to Plaintiff's failure

to address the statute of limitations argument in her response to Defendant's cross motion for summary judgment, it seems quite likely that the footnote did not put Plaintiff on notice regarding the seriousness of the argument. The lack of complete briefing on this issue convinces the Court that Defendant's late argument did unfairly surprise and prejudice Plaintiff. *Cf. Grunley Walsh U.S., LLC v. Raap*, 386 F. App'x 455, 459 (4th Cr. 2010) (finding no prejudice or unfair surprise, in part, because "the parties fully briefed and argued the merits" of affirmative defense raised in a summary judgment motion). Consequently, the Court will decline to dismiss the Complaint, finding that Defendant waived the statute of limitations defense.

## IV. CONCLUSION

Upon review of the filings and the entire record, the Court will grant in part Plaintiff's Motion for Summary Judgment (Dkt. 19) insofar as it seeks a remand of Plaintiff's case and will deny Defendant's Motion for Summary Judgment (Dkt. 21). Further, the Court will vacate the final decision of Defendant and remand the case to the ALJ for further proceedings. On remand, the ALJ shall reconsider Plaintiff's claim for waiver of overpayment and explicitly evaluate Plaintiff's argument that he received erroneous information from an official source within the SSA. A separate order will follow.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

May 15, 2019
Alexandria, Virginia